UNITED STATES FEDERAL DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEANNETTA SCOTT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KENAN ADVANTAGE GROUP, INC., an Ohio corporation, DOES 1 through 10, inclusive,<br><br>Defendants. | **Civil Action No.** _____<br><br>**PLAINTIFF JEANNETTA SCOTT'S COMPLAINT FOR COMPLAINT FOR SEXUAL DISCRIMINATION, HARASSMENT AND RETALIATION PURSUANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000 ET SEQ., AND THE LOUISIANA EMPLOYMENT DISCRIMINATION LAW**<br><br>**JURY TRIAL DEMANDED** |

NOW COMES, Jeannetta Scott, through the undersigned counsel, stating that the following causes of action are based upon the defendant's violations of Federal Law, via Title VII of the Civil Rights Act and violations of the Louisiana Employment Discrimination Law as follows:

## INTRODUCTION

1. This is an action brought by Plaintiff, Jeannetta Scott, for lost wages, compensatory and punitive damages and to enjoin the Defendant from engaging in any further gender discrimination, as prohibited by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and the Louisiana Employment Discrimination Law.

2. This is a clear-cut case of discrimination on the basis of gender in that the plaintiff, a veteran female truck driver, was subjected to the following disparate treatment:

    a. Plaintiff was assigned significantly less routes than her male counterparts.

    This caused her to make significantly less money than her male counterparts for no reason other than her gender.  The routes that were assigned to Plaintiff were the longest and/or least desirable routes.

b.  Plaintiff was placed in countless dangerous situations either because she was forced to pick up loads very late at night or pick up loads in unsecured locations.

c.  Male truck drivers regularly turned off their electronic tracking devices in order to drive more hours than legally allowed per day, thus making more money by running more loads.  Plaintiff was not allowed to engage in this behavior and in either event, knew it to be illegal and unsafe.

d.  Conversely, Plaintiff was written up for engaging in what she thought to be safe and conscientious behavior by pulling off to the side of the road for inclement weather.

e.  The workload discrimination by her supervisor was so obvious and disconcerting, two male co-workers even offered to each give one of his own routes to Ms. Scott so that she could earn enough money to feed her children or pay her rent.  Management flatly rejected this proposal.

f.  Ms. Scott was forced to "train" for significantly longer than her male counterparts.  She was forced to train over three months despite having close to a decade of trucking experience while male drivers with less experience were only required to train for a matter of days.

g.  Ms. Scott was not provided with the same equipment as her male counterparts.  She was assigned the slowest truck, which traveled at a maximum speed of 65

    miles per hour while her make counterparts all had trucks moving up to 68 miles per hour, which in the trucking industry is quite significant.

h. Ms. Scott's truck also had mechanical problems or so Ms. Scott believed it did based on the misrepresentations of her manager, "Mr. Jeffery." Indeed, Mr. Jeffery went so far as to misrepresent to the plaintiff that her truck's compressor was broke just to sideline her, thus forcing her to continue to take substandard routes and dangerous loads for a mere $541.00 at the end of the 2-week period.

i. Ms. Scott's superiors deliberately scheduled her loads to prevent her from getting enough sleep in between the drives. She was told by her male supervisors to sleep at the yard in her truck but there were no shower facilities for women at the yard despite there being shower facilities for men. Ms. Scott was either expected to not shower between loads, lose significant sleep to the point where it was unsafe for her to drive or shower with the men.

j. She was hired as a regional driver with a 1,000-mile radius maximum (or 500 miles each way). Despite this limitation, Ms. Scott's manager scheduled her to drive route significantly in excess of this amount and in inclement weather, yet when she would pull over for legitimate, legally mandated safety reasons, she would be written-up.

k. In one particularly galling instance, she was sent on a 1,000+ route during the snow because all of the other male drivers refused to take the route and was written up when she needed to pull over to wait out the storm when the conditions permitted her truck back on the road.

3. Ms. Scott was also the victim of sexual harassment in the workplace and was forced to endure the following:

   a. Plaintiff's male counterparts would make degrading and humiliating sexual comments to her and attempt to touch her on a continual basis. Plaintiff was too intimidated to report the sexual harassment given that there were no mechanisms in her workplace to guarantee any kind of safety.

   b. Her male counterparts and superiors referred to her as a "hot mess" and called her "trouble." When she would walk into a room, her male counterparts would say "here comes trouble," which was an overtly sexualized comment and also retaliatory given that the plaintiff called out her manager for his discriminatory conduct on more than one occasion.

   c. There were even racial components to this sexual harassment. It was insinuated that the reason Plaintiff was such "trouble" was because she was not just a woman, but a black woman. Her male co-workers commented on her hair, which she wears "natural," stating "when are you going to straighten your hair?"

   d. The most shocking and deplorable instances of sexual harassment Ms. Scott was forced to endure were male co-workers freely sharing sexually explicit videos and photos with her, despite her protests.

4. The aforementioned behavior caused Plaintiff to file a Complaint with Defendant's Human Resources department that was largely ignored and completely inadequately investigated.

5. The plaintiff's male co-workers continued in this behavior even after she filed an

> EEOC complaint related to gender discrimination but was ultimately too afraid to report the harassment after there had been no action real action taken by the employer regarding her report of gender-based discrimination.

6. Ms. Scott no longer felt safe in her workplace. She continued to work for her meager paycheck, however, out of financial necessity. This caused her to suffer continued mental anguish given that her workplace did not have security guards or any other measures in place to protect employees.

7. Ms. Scott was ultimately terminated from her employment and suffered economic damages in the form of lost wages. She suffered extreme and unnecessary emotional stress after being terminated for exercising her right to report.

## **PARTIES**

8. Plaintiff Jeannetta Scott is a female citizen of the United States, domiciled in the state of Louisiana and who resides in New Orleans, Louisiana. At all times relevant and pertinent herein, Plaintiff was an employee within the meaning of Title VII. 4.

9. Defendant Kenan Advantage Group, Inc., Ms. Scott's prior employer, (hereinafter referred to "KAG") is a foreign corporation domiciled in Ohio with sufficient minimum contacts with the State of Louisiana given that the Defendant conducts business and the wrongs alleged herein took place in the State of Louisiana.

10. At all times material hereto, KAG was an employer within the meaning of Title VII of the Civil Rights Act of 1964 having (15) or more employees, and as such was prohibited from wrongful termination and discrimination in employment decisions on the basis of gender.

## JURISDICTION AND VENUE

11. Plaintiff asserts that jurisdiction is proper in this Court pursuant to federal question jurisdiction, 28 U.S.C. § 1331, as pursuant to a timely "Right to Sue" from the Equal Employment Opportunity Commission for violations of Title VII of the Civil Rights Act.

12. This Court has jurisdiction to any state court claims pursuant to the Court's Supplemental Jurisdiction.

13. Venue is proper in this district under 28 U.S.C. § 1391 (a) and 42 U.S.C. § 2000(e)-5(f).

## FACTUAL ALLEGATIONS

14. Plaintiff was hired in April of 2019 as a regional truck driver for Defendant. The maximum distance for a regional driver is 1,000 miles roundtrip.

15. Mr. Jefferey was her manager and the main perpetrator of the gender-based discrimination in this case. Mr. Jeffery engaged in this outrageous and illegal behavior in order to force the plaintiff out of the company purely based on her gender and the fact that she was not inclined to roll over and accept the disparate treatment.

16. The hostile work environment to which she was subjected caused her extreme emotional distress such that on at least one occasion she was forced to go to the emergency room, and she was required to seek repeated medical care for her injuries.

17. Despite her efforts to report the hostility she endured to her employer, her reports were largely ignored and the conduct continued throughout the duration of her employment.

18. The plaintiff's struggle culminated in the termination of her employment in retaliation

for filing an EEOC Complaint, of which the employer gained knowledge at the commencement of the EEOC's investigation in November 2019.

19. Ms. Scott was harassed by her coworkers from the moment she began work for KAG. Such other acts of sexual harassment and discrimination that will be shown at trial.

20. The basis for the termination provided to the plaintiff was "lack of communication," which Plaintiff contends did not take place and thus was a pretext for discrimination. Plaintiff had not been disciplined prior to this and was never written-up or disciplined in any way, let alone for "lack of communication." The fact that the plaintiff was an above-average employee prior to the time she leads to the inference that there is a situation involving pretext resented here.

21. KAG willfully and recklessly committed the following breaches of the duty of care as it relates to Plaintiff:

    a. Knowingly standing by while Plaintiff was harassed by her male co-workers;

    b. Knowingly allowing her manager to discriminate against her on the basis of her gender.

22. KAG retaliated against Ms. Scott when it terminated her after learning she had filed a complaint with the EEOC regarding the gender discrimination. KAG has engaged in employment discrimination in violation of federal law by allowing sexual harassment and retaliation in the workplace.

23. These acts of discrimination, harassment and retaliation largely occurred in the Parish of Orleans, State of Louisiana while Plaintiff was KAG's employee. Plaintiff was discharged in retaliation in Parish of Orleans, State of Louisiana.

24. Plaintiff was discriminated against based on her gender from the start of her

employment in April 2019 to the date of her termination in November 2020 while employed for Kenan as a truck driver.

25. Plaintiff was ultimately terminated for complaining of discrimination by her manager based on her gender. Petitioner also experienced significant, outrageous and intimidating sexual harassment from her co-workers that she was afraid to report given the lack of safety mechanisms in place to protect plaintiff as a member of a protected class from this foreseeable harm.

26. Petitioner timely filed an EEOC Complaint in November 2019 and her discrimination and harassment were ongoing until the date of her termination in November 2020. Plaintiff received a right-to-sue notice dated February 20, 2021, which is attached hereto and made part hereof as Exhibit P-1.

27. Plaintiff brings suit for the above unlawful employment practices complained of herein for discrimination due to her gender and retaliation, against the defendant who failed to investigate these complaints of sexual harassment and retaliation.

28. All the acts of harassment, discrimination and retaliation occurred at Defendant's primary place of business where the plaintiff was employed, in New Orleans, Orleans Parish, State of Louisiana, within the **Eastern** District of Louisiana, and as a result, venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FIRST CAUSE OF ACTION

Gender Discrimination - Title VII and the Louisiana Employment Discrimination Law

(Against All Defendants)

29. The allegations of Paragraphs 1 through 28 are incorporated and referenced herein.

30. Defendant KAG by the conduct of its officers, employees, agents and/or

representatives, did deprive the plaintiff of her rights, privileges and immunities secured to her by the laws of the United States, particularly her right to be free from gender discrimination and her rights as provided by Title Vll of the Civil Rights Act of 1964, 42 USC § 2000e, when it systematically scheduled her for the least profitable routes, which resulted in her being paid substantially less than her male counterparts, assigned her to inferior trucks, and exposed her to a hostile environment on the basis of her gender. Plaintiff was the only female and African driver, and only driver to be treated in such a manner.

31. The Plaintiff has suffered damages and asks to be awarded a reasonable sum plus any and all past and future lost wages, compensatory and punitive damages. She suffered mental distress, humiliation, embarrassment, past and future pain and suffering, loss of enjoyment of life, and loss of income, past and future.

32. As a result of the hostile work environment, Plaintiff suffered emotional pain, mental anguish, physical pain and suffering, humiliation, and embarrassment to herself and co-workers, as well as financial damages due to loss of her employment and medical treatment, an exact sum to be proven at Trial.

33. Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law.

## SECOND CAUSE OF ACTION

<u>Retaliation – Title VII and the Louisiana Employment Discrimination Law</u>

(Against All Defendants)

34. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 35 as though

stated fully herein.

35. Plaintiff's male co-workers also engaged in sexually intimidating, offensive and demeaning behavior in the plaintiff's presence, made comments regarding her ability to adequately perform her job given her gender and generally created a discriminating and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Louisiana Employment Discrimination Law.

36. Ms. Scott did not report the hostile work environment or harassment because she was intimidated and knew such a complaint would be futile.  She did not feel safe in the workplace given the lack of security or any other mechanisms to ensure her safety.

37. Additionally, the plaintiff's attempts to report gender discrimination by management was met with such resistance that she believed her efforts in reporting harassment would be futile and certainly not worth the risk of her personal safety.

38. Plaintiff is informed and believes, however, that the plaintiff's supervisors had knowledge of the hostile work environment given the overt and outrageous nature of the harassment.

39. Plaintiff's termination was a pretext for discrimination based on gender and retaliation for the filing of an EEOC complaint. Defendant retaliated against petitioner as soon as the EEOC began investigating the plaintiff's claim for gender discrimination, which is a clear violation of Title VII and the Louisiana Employment Discrimination Law.

40. As a result of the hostile work environment, Plaintiff suffered emotional pain, mental anguish, physical pain and suffering, humiliation, and embarrassment to herself and co-workers, as well as financial damages due to loss of her employment and medical

treatment, an exact sum to be proven at Trial.

## THIRD CAUSE OF ACTION

41. Upon information and belief, KAG knew or should have known that the cumulative effect of discriminatory conduct and KAG's retaliatory animus were substantially certain to cause emotional distress to Ms. Scott.

42. As such, this conduct constitutes negligent and/or intentional infliction of emotional distress pursuant to Louisiana Civil Code Article 2315, as such, Defendant KAG is liable unto Ms. Scott for (1) Mental anguish and depression; (2) Humiliation/embarrassment; (3) Loss of enjoyment of life; (4) Medical expenses; (6) Prejudgment interest; (7) Attorney's fees; (8) Costs of these proceedings; and (9) Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law.

## JURY DEMAND

Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Jeannetta Scott, prays that Defendant Kenan Advantage Group be duly cited to appear and answer this Complaint and Jury Demand and, after due proceedings and legal delays, there be judgment herein in favor of plaintiff, and against defendant, as detailed in the foregoing Complaint and Jury Demand and in an amount reasonable in the premises, together with legal interest from the date of judicial demand, all costs and expenses of these proceedings, reasonable attorney's fees, punitive damages and any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

1. Awarding Jeannetta Scott damages in the form of past, present and future lost wages, prejudgment interest, and damages for all employment benefits she would have received but for the discriminatory and retaliatory acts and practices of Defendants;

2. Awarding Jeannetta Scott compensatory and punitive damages;

3. Awarding Jeannetta Scott damages for emotional distress, emotional pain, mental anguish, depression, loss of enjoyment of life, past and future physical pain and suffering;

4. Awarding Jeannetta Scott damages for all past and future medical expenses;

5. Awarding reasonable attorney's fees, expenses, and costs (including expert witness expenses) incurred in this action;

6. Awarding legal interest on all the damages prayed for from the date of judicial demand until paid; and

7. Ordering any other equitable relief this Court deems to be just and appropriate.

Respectfully Submitted:

By: /s/Christopher L. Williams
Christopher L. Williams
La. Bar Roll No. 32269
Williams Litigation, LLC
639 Loyola Ave., Suite 1850
New Orleans, LA 70113
Telephone: 504.308.1438
Fax: 504.308.1446
Email: chris@williamslitigation.com

Jessica M. Neal (To be admitted *pro hac vice*)
Jesse Kizewski (To be admitted *pro hac vice*)
LIU, BROWN & FIROOZMAND, P.C.
6430 Sunset Blvd., Ste. 505
Los Angeles, California
Tel: 562-480-2505
E-mail: jneal@LBFLawFirm.com

Attorneys for Plaintiff